**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **JAMES G. GRIFFITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:06-00652** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the

Plaintiff's Motion for Judgment on the Pleadings or in the Alternative Remand (Doc. No. 13.) and

the Defendant's Motion for Judgment on the Pleadings. (Doc. No. 17.) Both parties have consented

in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 4-5.)

The Plaintiff, James G. Griffith (hereinafter referred to as "Claimant"), filed an application

for DIB on July 13, 2004, (protective filing date), alleging disability as of May 31, 2003, due to

"[b]ack problems, herniated disc, bulging discs, depression, social anxiety disorder, chronic sinusitis,

hypertension, psoriasis, breathing problems, continual throat and groin infections, hip and leg

problems (pinched nerves)." (Tr. at 14, 52, 53-55, 65-66.) The claim was denied initially and upon

reconsideration. (Tr. at 28-30, 35-37.) On May 25, 2005, Claimant requested a hearing before an

Administrative Law Judge (ALJ). (Tr. at 42.) The hearing was held on February 22, 2006, before

the Honorable John T. Yeary. (Tr. at 286-325.) By decision dated March 20, 2006, the ALJ

determined that Claimant was not entitled to benefits. (Tr. at 14-20.) The ALJ's decision became the final decision of the Commissioner on June 16, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 7-10.) On August 22, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

2

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

3

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R.

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

§§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe

mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

Regulation further specifies how the findings and conclusion reached in applying the technique must

be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written
> decision issued by the administrative law judge and the Appeals Council must
> incorporate the pertinent findings and conclusions based on the technique. The
> decision must show the significant history, including examination and laboratory
> findings, and the functional limitations that were considered in reaching a conclusion
> about the severity of the mental impairment(s). The decision must include a specific
> finding as to the degree of limitation in each of the functional areas described in
> paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because

he had not engaged in substantial gainful activity at any time relevant to the decision. (Tr. at 16.)

Under the second inquiry, the ALJ found that Claimant suffered from a back disorder and affective

disorder,  which were severe impairments. (Tr. at 16-17.) At the third inquiry, the ALJ concluded

that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix

1. (Tr. at 17-18.) The ALJ then found that Claimant had a residual functional capacity for light work

with the following limitations:

> He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He should avoid
> concentrated exposure to extreme cold, extreme heat, humidity/wetness, vibrations,
> fumes/industrial pollutants, and hazards. He experiences mild to moderate pain but
> could be attentive to and carry out the assigned work tasks. He is limited to work
> involving simple, repetitive tasks with no public contact and limited co-worker and
> supervisor contact.

(Tr. at 18.) At step four, the ALJ found that Claimant could return to his past relevant work as a companion as it was actually performed by Claimant and as it is generally performed in the national economy. (Tr. at 19-20.) On this basis, benefits were denied. (Id.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 13, 1947, and was 58 years old at the time of the administrative hearing. (Tr. at 53, 292.) Claimant has a high school education and four years of college. (Tr. at 72, 294.) In the past, he worked as a salesperson, administrative assistant, shelter site manager, coal miner/general laborer, janitorial coordinator, and companion. (Tr. at 66-67, 77-83, 295-97, 315-17.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in failing to consider all of Claimant's impairments, both physical and psychological, and in failing to consider a combination of Claimant's impairments; (2) failed to evaluate properly Claimant's pain and credibility; and (3) erred in not considering Claimant's age and the side effects from his medications in determining that Claimant was able to return to his past relevant work as a domestic companion. (Pl.'s Br. at 2-5.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 7-14.)

1. Severe Impairments and Combination of Impairments.

Claimant first argues that the ALJ failed to consider properly his physical and psychological impairments. (Pl.'s Br. at 2-3.) He asserts that he suffers from degenerative disc disease with some herniation at L3-L4 and L4-L5, which causes pain and weakness in his extremities and causes him to fall. (Id. at 3.) He further asserts that he suffers from clinical depression, separation disorder, social anxiety disorder, and feelings of uselessness and depression. (Id.) The Commissioner asserts that Claimant improperly attempts to establish that he suffers from severe impairments on the basis of mere diagnoses. (Def.'s Br. at 7-8.) However, the Commissioner further asserts that the only evidence of functional limitations of record regarding Claimant's physical impairments consisted of the RFC assessments of Dr. Reddy and Dr. Lambrechts, which support the ALJ's finding of light

7

work. (Id. at 8.) Regarding Claimant's mental impairments, the Commissioner asserts that the functional assessments of Dr. Solomon and Dr. Lilly do not establish significant mental functional limitations. (Id. at 9.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe. 20 C.F.R. §§ 404.1520(c); 416.920(c) (2004)." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2004); see also 20 C.F.R. §§ 404.1521(a); 416.921(a) (2004); Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (recognizing change in severity standard). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b); 416.921(b) (2004). Examples of basic work activities under those sections are:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b); 416.921(b) (2004).

The ALJ evaluated the evidence of record and summarized it in his decision. (Tr. at 16-17.) Regarding Claimant's physical impairments, the medical evidence indicates that Claimant was treated by Dr. Michael A. Muscari, D.O., beginning in 1985, with treatment for Claimant's complaints of back pain resulting from a work injury beginning in 1990. (Tr. at 277.) Claimant's back injury was aggravated in 1991 on shoveling coal. (Id.) On September 2, 2003, x-rays of Claimant's lumbosacral spine revealed degenerative disc changes and mild spondylosis at L3-L4 and mild degenerative disc space narrowing at L4-L5. (Tr. at 233.) The x-rays of Claimant's dorsal

spine indicated mild dextroscoliosis. (Tr. at 234.) A MRI Scan on September 2, 2003, revealed: (1) moderately severe left posterolateral herniation of L4-L5 disc compressing the left ventrical aspect of the thecal sac, (2) anterior disc bulging and spondylosis at L3-L4, and (3) invagination of disc into the superior endplate of L3. (Tr. at 232.)

    Claimant underwent a consultative examination on October 26, 2004, by Rodolfo Gobunsuy, M.D. (Tr. at 179-90.) Dr. Gobunsuy noted Claimant's reports of constant back pain with radiation to the left leg with occasional numbness of the left leg. (Tr. at 179.) Claimant reported that his left leg was weak and had given out on him on several occasions, which resulted in injuries, without fractures, to his face and legs. (Id.) His pain was worse on bending, lifting, riding, standing, and with prolonged sitting, and was improved by changing position, lying down, using a heating pad, and taking pain medications. (Id.) Claimant reported shortness of breath on activity, which was improved by resting and using an inhaler. (Id.) Dr. Gobunsuy noted however, that Claimant had smoked for the past 27 years and continued to smoke. (Id.) On exam, Claimant presented with diminished air entry and minimal wheezing on auscultation. (Tr. at 180.) Dr. Gobunsuy noted that Claimant "huffed and puffed" during the exam. (Id.) He further noted no muscle weakness or atrophy, normal reflexes, and no edema, redness, or warmth of the extremities. (Tr. at 180-81.) Claimant had diminished touch sensation in his left thigh laterally, and although he could heel-to-toe tandem, he could not walk on his heels or toes, or squat. (Tr. at 181.) Claimant presented with no obvious scoliotic curvature but with mild dorsal kypohosis and humping on the right thoracolumbar area, which was most obvious on bending. (Id.) His lumbar spine was tender from L1-S1, including both sacroiliac joints with paralumbar spasm. (Id.) Straight leg raising was positive in the supine position but satisfactory when sitting. (Id.) Dr. Gobunsuy diagnosed Claimant as suffering from a herniated lumbar disc and

bulging disc with pinched nerve, coal miner's pneumoconiosis, mild chronic obstructive pulmonary disease ("COPD"), and chronic sinusitis. (Tr. at 181.)

State agency physician, Dr. Uma P. Reddy, M.D., completed a form Physical Residual Functional Capacity Assessment on November 17, 2004. (Tr. at 211-19.) Finding Claimant's allegations partially credible, Dr. Reddy opined that Claimant was limited to performing work at the light exertional level, with occasional postural limitations. (Tr. at 212-13, 216.) Dr. Reddy further opined that Claimant should avoid concentrated exposure to extreme cold, wetness, humidity, vibration, fumes, odors, dusts, gases, ventilation, and hazards. (Tr. at 215.) State agency physician Marcel G. Lambrechts, M.D., likewise completed a form Physical Residual Functional Capacity Assessment on April 7, 2005. (Tr. at 238-46.) Dr. Lambrechts opined that Claimant's symptoms appeared magnified but noted that x-ray reports supported some of his symptoms. (Tr. at 243.) He opined that Claimant was limited to performing light level work with occasional postural limitations and should avoid concentrated exposure to extreme cold and heat, fumes, odors, dusts, gases, ventilation, and hazards. (Tr. at 239-42.)

In a letter to Claimant's counsel dated November 29, 2005, Dr. Muscari opined that Claimant's back pain is "chronic in nature and prohibits him from working due to the pain." (Tr. at 277.) He further opined that Claimant "is unable to seek gainful employment due to his chronic back problems and mental status. I feel that he is totally disabled from working at this time, and I am very doubtful that his condition will change due to the degeneration in his spine." (Id.)

On August 12, 2004, Claimant completed a form "Function Report," on which he indicated that he took his mother to her medical appointments, picked up her prescriptions from the pharmacy, shopped for her, and attempted "to see to her general welfare." (Tr. at 89-96.) He reported suffering

from panic attacks, as well as pain in his hips, legs, and back. (Tr. at 90.) He indicated that he prepared quick, simple meals on a daily basis and washed dishes for 20 minutes every three days. (Tr. at 91.) He reported that his fiancee and friends cleaned his house, did laundry, mowed his yard, and performed any necessary home repairs. (Id.) He explained that physical activity caused him "to get down in my back, hips, and legs hurt worse." (Tr. at 92.) However, Claimant indicated that he drove a car, shopped for groceries and household products, paid bills, and managed his savings & checking accounts. (Id.) He further indicated that his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, stair climb, and see, were affected by his physical impairments. (Tr. at 94.) To this extent, he reported that he could walk only 150 feet before having to stop and rest. (Id.) At the administrative hearing, Claimant testified that his daily activities included watching television, reading the Bible,  sitting with his mom, and caring for his personal needs, and that he had only occasional difficulties dressing himself. (Tr. at 301-04.) He reported that a friend cleaned his house and shopped for his groceries. (Tr. at 301-02.) Claimant further testified that he was able to sit for 30 minutes at a time, stand for 15 minutes, walk 30 to 50 feet, and lift a maximum of ten pounds. (Tr. at 304-05.) He stated that his pain medication caused him to be sick to his stomach a lot of the time. (Tr. at 306.) Claimant indicated that he used two heating pads to alleviate his constant back pain. (Id.) Claimant rated his pain generally at a level eight out of ten, when on medications. (Tr. at 307.) He further stated that he had experienced two episodes of falling since May, 2005. (Tr. at 308.)

Noting Claimant's back disorder, together with Dr. Gobunsuy's findings from his consultative examination, the diagnostic testing, and Dr. Muscari's findings, the ALJ determined that Claimant's back disorder was a severe impairment. (Tr. at 16-17.) Although Claimant initially

11

alleged that his leg and hip pain rendered him disabled (Tr. at 65-66.), the medical evidence does not support significant functional limitations in the use of his leg and hip. Claimant was unable to walk on his heels and toes, and could not squat. He also had diminished sensation in the left thigh laterally at the L5 distribution. However, there is no evidence that these slight limitations significantly affected his ability to perform basic light level work-like activities. The RFC assessments indicate that Claimant is able to perform work at the light level of exertion. Accordingly, the Court finds that the ALJ's finding that Claimant's only severe physical impairment was that of a back disorder, is supported by substantial evidence of record.

Regarding Claimant's mental impairments, the evidence reveals that Claimant sought treatment from Dr. M. K. Hasan, M.D., from September, 23, 2003, through March 10, 2006. (Tr. at 262-73, 279-81.) On September 23, 2003, Dr. Hasan diagnosed Claimant as suffering from (1) major depression, recurrent, moderate to moderately severe in nature; (2) an adjustment disorder with anxious and depressed mood secondary to his physical illness and situational factors; and (3) chronic pain syndrome. (Tr. at 271.) Dr. Hasan prescribed Paxil CR and Serax, and recommended that he attend church and perform calisthenics. (Id.) From November 10, 2003, through March 10, 2006, Dr. Hasan noted that Claimant reported that he continued to do fairly well, and noted that his depression and anxiety were under much better control.[2] (Tr. at 262-69, 279-81.) Dr. Hasan also noted that the counseling and medications really helped Claimant. (Id.)

Dr. Robert W. Solomon completed a Psychiatric Review Technique form on October 28, 2004, in which he opined that Claimant's affective and anxiety-related disorders were non-severe

---

[2] On June 14, 2004, Dr. Hasan noted that Claimant continued to do rather poorly. (Tr. at 268.)  The subsequent progress notes however, indicate that Claimant continued to do fairly well and that his depression and anxiety were under much better control. (Tr. at 262-69, 279-81.)

impairments. (Tr. at 191-210.) Dr. Solomon opined that Claimant had mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace, but had no episodes of decompensation. (Tr. at 201.) He further opined that Claimant was credible but that his "restrictions do not appear to preclude him from work-like activities, and these restrictions do not appear to be severe." (Tr. at 203.)

On April 16, 2005, Dr. Debra L. Lilly, Ph.D., also completed a Psychiatric Review Technique form on which she, too, opined that Claimant's affective and anxiety-related disorders were non-severe impairments. (Tr. at 247-61.) As did Dr. Solomon, Dr. Lilly opined that Claimant was only mildly limited in his activities of daily living, social functioning, and maintaining concentration, persistence, and pace, and experienced no episodes of decompensation. (Tr. at 257.) She further opined that Claimant minimized his responsibilities regarding the care of his invalid mother. (Tr. at 259.) She noted that although Claimant reported that his depression had worsened, his treating psychologist indicated that his symptoms were more under control. (Id.) Upon considering his activities which included caring for his mother, having friends over, driving, and performing activities outside the home as required, Dr. Lilly opined that the "preponderance of the evidence reflects that the claimant is not entirely credible and has no severe limitations from a mental disorder." (Id.)

Psychological Testing conducted on June 6, 2005, by Roger P. Mooney, M.A., revealed on KBIT-2 testing, an overall IQ of 66, which fell in the lower extreme range. (Tr. at 275.) Mr. Mooney opined however, that Claimant's "level of anxiety may have significantly impacted the standard scores on the KBIT-2." (Id.) The Beck Anxiety and Depression Inventories revealed severe anxiety and depression. (Id.) Mr. Mooney further opined that Claimant's "depressed mood combined with

13

the loss of interest in others, difficulty sleeping, agitations, and the feelings of worthlessness suggest Mr. Griffith is significantly depressed." (Tr. at 276.)

Claimant reported that he could follow written instructions but that he gets nervous when trying to retain spoken instructions. (Tr. at 94.) He further reported that he had a short attention span and did not handle stress very well. (Tr. at 94-95.) At the administrative hearing, Claimant testified that he suffered from panic attacks and that his depression was not under control. (Tr. at 298.)

The ALJ summarized the mental evidence of record and determined that Claimant suffered from severe affective disorder. (Tr. at 16-19.) He further determined that Claimant had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. at 17-18.) In reaching these conclusions, the ALJ noted that Claimant drives and sits with his mother, does not like being around crowds, gets nervous when readying to leave the house, and has problems with memory and concentration. (Tr. at 18.) The ALJ acknowledged Claimant's testimony and reports, but found that Dr. Hasan's longitudinal notes demonstrated that Claimant was doing fair and that his panic disorder was in remission. (Tr. at 19.)

Based on the foregoing, the Court finds that the ALJ's findings are supported by the substantial evidence of record. Although Claimant alleged that he was disabled in part due to social anxiety, as diagnosed by Dr. Hasan, as well as separation disorder, he has not demonstrated that any resulting limitations significantly impacted his ability to perform work-like activities. The evidence revealed that his mental conditions had improved and that his panic attacks were in remission. Accordingly, Claimant's argument is without merit.

Claimant further argues that the ALJ failed to consider the combination of his impairments. (Pl.'s Br. at 2-3.) The Commissioner asserts that the ALJ specifically considered his impairments together. (Def.'s Br. at 9-11.) He further asserts that Claimant failed to identify any specific functional limitation which the ALJ did not consider. (Id. at 10.)

The Social Security Regulations provide as follows:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of Claimant's impairments in combination and "fractionalized" the impairments. (Pl.'s Br. at 2-5.) The ALJ clearly noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 15, 17-18.) The ALJ then discussed Claimant's impairments, finding that his back disorder and affective disorder, were severe impairments. (Tr. at 16-17.) The ALJ specifically found, however, that the record did not

15

reflect that Claimant had "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. at 17.)

Furthermore, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's RFC, restricting him to light work with additional limitations. (Tr. at 18.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996). As previously noted, the ALJ thoroughly considered and summarized the medical evidence of record. (Tr. at 16-17.) In determining Claimant's RFC, the ALJ found that Claimant should perform only occasional postural activities and should avoid concentrated exposure to temperature extremes, humidity and wetness, vibration, hazards, and environmental pollutants. (Tr. at 18.) He further limited Claimant to performing work involving simple, repetitive tasks with no public contact and limited co-worker and supervisor contact. (Tr. at 18.) These limitations accommodate Claimant's mental impairments. Based on his reported duties as a domestic companion and the mild to moderate mental limitations and the minimal physical

limitations identified by the medical evidence, the Court finds that the ALJ's RFC is consistent with the function of a domestic companion, and therefore, supported by substantial evidence. The ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 14.) Accordingly, the undersigned finds that the ALJ considered Claimant's impairments in combination and that substantial evidence supports the ALJ's finding that Claimant did not have a combination of impairments which met or medically equaled a Listing.

 2. <u>Pain and Credibility Assessment</u>.

Claimant next argues that the ALJ erred in finding that his testimony was less than credible. (Pl.'s Br. at 2-5.) The Commissioner asserts that Claimant improperly assumes that because he met step one of the pain and credibility analysis, he is presumed to have satisfied step two. (Def.'s Br. at 11.) The Commissioner asserts that the ALJ's decision is supported by the record, and therefore, that Claimant's argument is without merit. (Tr. at 11-13.)

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b) (2004); SSR 96-7p; <u>see also</u>, <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. <u>Id.</u> at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such

17

evidence is not determinative. <u>Hyatt v. Sullivan</u>, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (I) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> >
> > (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> >
> > (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions. <u>See</u> SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other

evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can

perform in a work setting, after giving appropriate consideration to all of her impairments."
Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2) (2004). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." Id. § 404.1527(b).

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 15, 18-19.) Having resolved all doubts in Claimant's favor, the ALJ acknowledged, with regard to the threshold test, that Claimant "produced evidence of an impairment that could reasonably be expected to cause the alleged symptoms." (Tr. at 18.) Regarding the second step, the ALJ considered the intensity and persistence of Claimant's alleged symptoms and complaints of pain, and the extent to which they affected his ability to work. (Tr. at 18-19.) The ALJ concluded that the Claimant's complaints and "allegations are credible only to the extent that h[e] is limited to light work but do not preclude the performance of all work." (Tr. at 19.)

The ALJ noted Claimant's complaints of constant back pain and his self -assessed pain ratings at a level eight out of ten without medication, and at a level seven out of ten with medication.

20

(Tr. at 18.) He further noted Claimant's use of heating pads and pain medication for relief. (Tr. at 18.) The ALJ acknowledged Claimant's testimony that his pain medication made him sick to his stomach. (Id.) He noted that Claimant reported that he experienced panic attacks when around large crowds of people. (Id.) Additionally, the ALJ noted Claimant's daily activities to include driving two miles, watching television, reading the Bible, and sitting with his ill mother. (Id.)

In considering the factors under 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4), the ALJ found that Claimant's reported symptoms were not entirely credible. (Tr. at 19.) As discussed above, the objective medical evidence of record did not support the severity of pain and resulting limitations as reported by Claimant. The ALJ further found that other evidence of record did not support Claimant's complaints of pain. (Id.) Specifically, the ALJ noted that although Claimant testified to significantly limited activities of daily living, the medical record reflected "minimal complaints and treatment for the claimant's back disorder in the file which is not consistent with his pain being at a level seven to eight out of ten as testified by the claimant." (Id.) Notwithstanding Claimant's reported side effects from his medication, the ALJ concluded that such limitations were not as significant as to preclude him from performing his past relevant work as a companion. (Id.) The record does not support further side effects than were considered by the ALJ (i.e., sick to his stomach) and Claimant does not identify any further side effects. Furthermore, the ALJ noted that despite Claimant's complaints of panic attacks, his treating physician opined that such condition was in remission. (Id.)

Based on the foregoing, the undersigned finds that Claimant's alleged symptoms and pain and the limitations therefrom are not supported by the objective medical evidence of record. Dr. Hasan's treatment notes are replete with Clamant's reports that he was doing fairly well and that the medications helped him. Furthermore, the record, as a whole, contains minimal complaints of

21

back pain, despite Claimant's self-assessed pain ratings. The ALJ credited Claimant's subjective complaints to the extent that he is capable of performing light work, with physical limitations on postural and environmental activities, as well as mental limitations regarding simple, repetitive work with no public, and limited co-worker and supervisor, contact. (Tr. at 18.)

Upon a careful review of the record, the undersigned finds that the ALJ's determination that Claimant's statements respecting his pain/symptoms were not totally credible is supported by substantial evidence. The ALJ's analysis of Claimant's pain and credibility was proper and in accordance with the applicable law and Regulations. The evidence of record indicates, as the ALJ found, that Claimant's allegations of pain and other symptoms are not as debilitating as he contends. (Tr. at 17-18.) The ALJ found that Claimant could perform light work with specific limitations which accommodate Claimant's symptoms and complaints of pain. (Tr. at 18.) Therefore, the ALJ took into account most of Claimant's symptoms in assessing his residual functional capacity. The ALJ's determination on Claimant's pain and credibility is supported by substantial evidence and Claimant's argument is without merit.

3. Step Four Analysis.

Claimant argues that the ALJ erred at step four of the sequential analysis by not considering his age. (Pl.'s Br. at 5.) He also argues that his abilities have changed since he last worked as a companion in 1996, and that the ALJ erred in finding that he could return to this past relevant work. (Id. at 4-5.) The Commissioner argues that the ALJ was not required to consider Claimant's age at step four of the sequential analysis, and that contrary to the Regulations, Claimant mistakenly argues that he is unable to perform his past relevant work because he performed it so long ago. (Def.'s Br. at 13-14.)

The undersigned agrees with the Commissioner and finds Claimant's argument on this point unavailing. As discussed above, the Regulations provide a sequential analysis for adjudicating disability. See 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). At step four, if it is determined that a claimant can perform his PRW, his vocational factors of age, education and work experience and whether his past relevant work exists in significant numbers in the national economy, factors that are considered at step five, are not considered. See 20 C.F.R. § 404.1560(b)(3) (2004). The ALJ found at step four that Claimant was able to return to his past relevant work as a companion. Consequently, the ALJ was not required to consider Claimant's age and other vocational factors.

The undersigned further finds unavailing Claimant's argument that his past relevant work was performed so long ago that he presently is unable to perform it. Past relevant work is defined under the Regulations as work that the Claimant performed within the past fifteen years, that was substantial gainful activity, and that lasted long enough for the Claimant to learn to do it. 20 C.F.R. §§ 404.1560(b)(1); 416.960(b)(1) (2004). Substantial gainful activity is defined as activity that is both substantial and gainful as follows:

> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

> (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs to be substantial gainful activity.

20 C.F.R. §§ 404.1572; 416.972 (2004).

Claimant states in his brief that the companion job was performed in 1996, and that given his "degenerative disc disease and major depression he would not be able to take care of an elderly gentleman as he could in 1996." (Pl.'s Br. at 4.) The undersigned finds that this job was performed within the 15 year period as defined by the Regulations, and therefore, was properly considered for timing purposes, as past relevant work. Claimant does not otherwise challenge the classification of his past relevant work and the Court notes that the VE testified that based on the RFC as assessed by the ALJ, that Claimant would be able to perform his past relevant work as a domestic companion, as performed by him and as generally performed in the national economy. (Tr. at 322.) The undersigned finds that the ALJ's hypothetical question was proper and was based on his assessed RFC which is supported by the record.

Based upon a review of the record, the Court finds that the ALJ's hypothetical question to the VE and his reliance on the VE's testimony was proper, supported by his RFC assessment, in accordance with the applicable law and Regulations, and is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings or in the Alternative Remand (Doc. No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 17.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 20, 2007.

R. Clarke VanDervort
United States Magistrate Judge

24